323 So.2d 426

R. N. KELLY COTTON MERCHANT, INC.

v.

Charles T. COX, Jr.

SC 1368.

Supreme Court of Alabama.

Jan. 9, 1976.

Rehearing Denied Feb. 20, 1976.

Thomas Reuben Bell and Donald W. Lang, Sylacauga, for appellee.

Wm. Bew White, Jr., Hobart A. Mc-Whorter, Jr., A. H. Gaede, Jr., Birmingham, for appellant.

MERRILL, Justice.

R. N. Kelly Cotton Merchant, Inc. (hereinafter Kelly Co.) obtained a judgment amounting to $16,000.00 against Charles T. Cox, Jr. in a contract action. Kelly Co. appealed, contending that the judgment was inadequate under the facts. We agree.

In the spring of 1973, appellee Cox, a cotton ginner, seller of seed and fertilizer and cotton handler, contracted with a number of cotton farmers to buy their 1973 cotton crops. Cox also contracted to sell this cotton to certain mills and brokers, including Kelly Co., and Kelly Co. subsequently contracted to sell the cotton to Hartwell Mills.

By the autumn of 1973, the price of cotton had more than doubled. Naturally, many cotton farmers were not eager to sell their cotton to Cox at the contract price of 34¢ to 36¢ per pound. On September 28, 1973, Cox filed a complaint seeking to enjoin the cotton farmers from breaching the contracts wherein they were obligated to sell him their 1973 cotton crops. Cox also sought a declaratory judgment against Kelly Co. and the cotton mills as to his (Cox's) liability under the contracts wherein he had agreed to sell them cotton at a stipulated price.

On October 8, 1973, the trial court granted a preliminary injunction against the cotton farmers who had contracted to sell their cotton to Cox.

On October 26, 1973, Kelly Co. and the cotton mills filed an answer and counterclaim against Cox seeking (1) a declaration that the written contracts between them and Cox were binding and enforceable and (2) damages, in case Cox did not deliver the specified number of bales of cotton. On November 5, 1973, they filed an amended answer and counterclaim against Cox, asking that he be enjoined from breaching his contracts with them. The hearing on the injunction was had on November 14, 1973. The testimony adduced at the previous hearings was made a part of the record.

On December 4, 1973, the trial court granted a preliminary injunction against Cox. But despite this injunction, Cox claimed that he was unable to deliver all of the cotton as specified under his contracts with the brokers and the mills.

The trial court severed Kelly Co's. counterclaim from that of the cotton mills'

[Kelly was severed because it was not registered to do business in this state], and th ecase proceeded to trial on November 12, 1974. The findings of the trial court, in pertinent part, are as follows:

"That Cox entered into three contracts to ship Kelly a total of 1800 bales of cotton. Cox fulfilled Contract No. 743, covering 200 bales. Contract No. 742 covered 1300 bales at 36¢ per pound, and Cox shipped Kelly 920 bales, leaving a shortage of 380 bales on this contract. Contract No. 744 covered 300 bales at a price of 34¢ per pound. No cotton was shipped under this contract. Thus, of the total of 1800 bales contracted for, Cox shipped Kelly 1120 bales and was short 680 bales. Kelly had the burden of proof as to the amount of his damages sustained as a result of this breach by Cox. * * *"

Neither side seriously disputes this part of the decree and we agree that these figures should be the basis of computation of damages. The error is in the next part of the decree which follows:

" * * * Having heard the evidence in the trial, and having carefully reviewed same since the trial, the Court is reasonably satisfied that Kelly is still obligated to deliver to Hartwell Mills 680 bales of cotton at the price contracted for. The Court is not reasonably satisfied that Kelly actually 'covered' the cotton called for in his contracts with Cox. There was no evidence offered to show the market price of cotton at the time when Kelly learned of the breach. The only evidence as to the price of cotton as of the date of the trial was 40¢ per pound, which the Court must necessarily use in assessing Kelly's damages. The Court thus concludes that Kelly's damages amounted to the sum of $16,600, and that Kelly is entitled to this amount plus interest from the date of the breach:"

We cannot agree with the trial court's conclusions that led to the $16,600.00 judgment in this case. We think the trial court

erred in three instances which require that the judgment be reversed.

■ First, we cannot agree that Kelly Co. did not cover the 680 bales of cotton it was obligated to deliver to Hartwell Mills. Cover is operationally defined in Code of Alabama, Tit. 7A, § 2–712(1) (Recomp. 1958) (Supp.1966), which states as follows:

"(1) After a breach within the preceding section [§ 2–711, dealing in pertinent part with buyers' remedies when the seller fails to deliver] the buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution of those due from the seller."

There is ample evidence in the record to support the conclusion that Kelly Co. did cover the 680 bales of cotton which Cox failed to deliver to Kelly Co. An example of this is found in the direct testimony of Mr. R. N. Kelly, President of Kelly Co., on direct examination:

"Q. Did R. N. Kelly Cotton Merchant, Inc. ship in the year 1973 680 bales or more to the Hartwell Mills in Georgia to replace the cotton which is the subject of Exhibits C-1, D-1 and E-1 [Contracts numbered 742, 743 and 744 evidencing the sale of cotton between Kelly Co. and Cox] which was not delivered?

"A That's right."

In the course of the same testimony, we find as follows:

"Q And during 1973 R. N. Kelly Cotton Merchant, Inc. did purchase at least 680 bales to replace the cotton required under the contracts?

"A Yes, sir.

[Objection by Messrs. Bell and Lang]

"Q· Would you answer that?

"A Yes, sir. I bought cotton for them."

These excerpts from Mr. Kelly's testimony, along with other evidence found in the record are supportive of a conclusion that Kelly Co. did cover the 680 bales of cotton contracted to Hartwell Mills. The evidence shows that this cotton which Kelly Co. covered was the 680 bales it would have received from Cox but for Cox's breach of his contracts with Kelly Co.

Had the trial court been correct in its finding that Kelly Co. had not "covered" the cotton contracted for with Cox, then the remainder of the decree would have been correct. But in view of our holding that Kelly Co. did cover, that automatically made the computation part of the decree erroneous. That is the second phase of the decree.

■ The trial court found that there was no evidence of the market price of cotton at the time of Cox's breach and, therefore, chose to use 40¢ per pound, a figure it termed " * * * The only evidence as to the price of cotton as of the date of the trial * * *" as a measure of damages. The court was correct in its determination that there was no evidence in the record of the market price of the cotton on the date of Cox's breach of the contract. But market price is not necessary in order to determine damages awarded to a party who has covered. The statute governing damages available in instances of cover is Code of Alabama, Tit. 7A, § 2–712(2), (Recomp.1958) (Supp.1966), which states as follows:

"(2) The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (section 2–715), but less expenses saved in consequence of the seller's breach."

There is uncontradicted evidence in the record of the average price Kelly Co. paid for the covered cotton. This cover price, designated in the statute, provides a fairer measurer of damages to Kelly Co. than that erroneously set by the trial court. For evidence of the cost of cover, we turn

again to Mr. Kelly's testimony, which is as follows:

"Q And what was the average price per pound charged R. N. Kelly Cotton Merchant, Inc. for that replacement cotton [the covered cotton]?

[Objection by Mr. Lang]

"A What we actually paid was 78.46.

"Q Put decimal points in there.

"A Seventy-eight, point forty-six cents a pound. * * *"

And later in the same testimony, we find the following:

"Q Did you pay 78.46 a pound on the average for it [cotton covered to Hartwell Mills]?

"A On the average, yes, sir."

The testimony of Mr. Kelly as to the average cost of cover more nearly reflects the actual damages sustained by Kelly Co. That cost is a necessary factor in establishing damages sanctioned by the Code in situations where the buyer has invoked the remedy of cover.

 Specific evidence as to the cost of cover is not necessary; a mere average, to which Mr. Kelly testified, is adequate. Alabama's Commercial Code rejects the theory that damages must be calculable with mathematical accuracy. The Official Comment to Tit. 7A, § 1–106 (Recomp. 1958) (Supp.1966), suggests: " * * * Compensatory damages are often at best approximate: they have to be proved with whatever definiteness and accuracy the facts permit, but no more." Testimony provided by Mr. Kelly met this standard. Therefore, we hold that the trial court erred in its application of the 40¢ per pound price in order to award damages to Kelly Co.

In the final instance, by basing its award of damages on the two erroneous conclusions as to cover and damages awarded for cover drawn by the trial court, that court's final calculation of damages totaling $16,600.00 and interest was also in error.

Rather than calculating damages at a price of 40¢ per pound for the 680 bales (each bale containing 500 pounds) that Kelly Co. had to cover, the court should have used the difference between the cost of cover (78.46¢ per pound) and the contract price, plus incidental and consequential damages. The cause is remanded for the calculation of damages and the rendering of a judgment in accordance with this opinion.

Reversed and remanded with instructions.

HEFLIN, C. J., and BLOODWORTH, MADDOX, FAULKNER, JONES, ALMON, SHORES and EMBRY, JJ., concur.